# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| S.S.K. NANDURI, derivatively on behalf of GOGO INC., <br><br> Plaintiff, <br><br> v. <br><br> MICHAEL J. SMALL, *et al.*, <br><br> Defendants, <br> and <br><br> GOGO INC., <br><br> Nominal Defendant. | No. 18 C 06524 <br><br> Judge Martha M. Pacold <br> Magistrate Judge Sheila M. Finnegan |
| MICHAEL HUTSENPILLER, derivatively on behalf of GOGO INC., <br><br> Plaintiff, <br><br> v. <br><br> MICHAEL J. SMALL, *et al.*, <br><br> Defendants, <br> and <br><br> GOGO INC., <br><br> Nominal Defendant. | No. 18 C 06547 <br><br> (*Consolidated with the above*) |

**BRIEF IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL OF SETTLEMENT**

## TABLE OF CONTENTS

I. INTRODUCTION ........................................................................................................... 1

II. BACKGROUND OF THE DERIVATIVE MATTERS AND SETTLEMENT NEGOTIATIONS ............................................................................................................ 2

   A. Factual Background ................................................................................................ 2

   B. Relevant Procedural History .................................................................................. 3

   C. Settlement Negotiations ......................................................................................... 5

III. THE SETTLEMENT CONSIDERATION .................................................................. 6

IV. THE COURT SHOULD GRANT PRELIMINARY APPROVAL .......................... 9
   A. Applicable Legal Standards ................................................................................... 9
   B. The Settlement Falls Within the Range of Possible Approval ...................... 10
      i. The Strength of Stockholders' Claims Balanced Against the Material Benefits Provided by the Settlement ........................................................................ 10
      ii. The Complexity, Expense, and Likely Duration of the Litigation ............ 12
      iii. The Settlement is a Product of Arm's-Length Negotiations .................... 12
      iv. The Stage of the Proceedings and the Amount of Discovery Completed ........ 13
      v. The Opinion of Competent Counsel ......................................................... 13

V. THE MANNER AND FORM OF NOTICE SHOULD BE APPROVED ............ 14

VI. CONCLUSION ........................................................................................................... 15

## TABLE OF AUTHORITIES

**CASES**

*Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*,
2011 WL 3290302, (N.D. Ill. July 26, 2011) .................................................................................. 12

*Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*,
2012 WL 65172, (N.D. Ill. Feb. 28, 2012) ...................................................................................... 11

*Armstrong v. Bd. of Sch. Dirs. of Milwaukee,*
616 F.2d 305, 314 (7th Cir.1980) .................................................................................................... 9

*Bushansky v. Armacost*,
No. 12-CV-01597-JST, 2014 WL 2905143 (N.D. Cal. June 25, 2014) ........................................ 15

*Chaffee v. A & P Tea Co.*,
1991 WL 5859 (N.D. Ill. Jan. 16, 1991) ........................................................................................ 15

*City of Tamarac Firefighters' Pension Tr. Fund v. Corvi*,
2019 WL 549938 (Del. Ch. Feb. 12, 2019) .................................................................................... 11

*Dorvit on behalf of Power Sols. Int'l, Inc. v. Winemaster*,
950 F.3d 984, 989 (7th Cir. 2020) .................................................................................................. 10

*Evans on behalf of United Dev. Funding IV v. Greenlaw*,
3:16-CV-635-M, 2018 WL 2197780 (N.D. Tex. May 14, 2018) .................................................. 14

*In re Caremark Int'l Inc. Derivative Litig.*,
698 A.2d 959 (Del. Ch. 1996) ........................................................................................................ 10

*In re Fab Universal Corp. Shareholder Derivative Litig.*,
148 F. Supp. 3d 277, 280 (S.D.N.Y. 2015) .................................................................................... 12

*In re Gen. Motors Corp. Engine Interchange Litig.*,
594 F.2d 1106, 1124 (7th Cir. 1979) ............................................................................................... 9

*In re Lloyd's Am. Tr. Fund Litig.*,
No. 96 CIV.1262 RWS, 2002 WL 31663577 (S.D.N.Y. Nov. 26, 2002) ..................................... 12

*In re Rambus Inc. Derivative Litig.*,
No. C 06-3513 JF (HRL), 2009 WL 166689 (N.D. Cal. Jan. 20, 2009) ....................................... 15

*Lace v. Fortis Plastics LLC*,
2015 WL 1383806 (N.D. Ind. Mar. 24, 2015) .............................................................................. 13

*McCue v. MB Fin., Inc.*,
2015 WL 1020348 (N.D. Ill. Mar. 6, 2015) .................................................................................... 9

*Pfeiffer v. Toll*,
989 A.2d 683 (Del. Ch. 2010).................................................................................................. 10

*Susquehanna Corp. v. Korholz*,
84 F.R.D. 316, 319–20 (N.D. Ill. 1979).................................................................................... 10

*Unite Nat'l Ret. Fund v. Watts*,
2005 WL 2877899 (D.N.J. Oct. 28, 2005)................................................................................ 13

**RULES**

Fed. R. Civ. P. 23.1(c) ................................................................................................................. 1

Federal Rule of Civil Procedure 23.1 ........................................................................................ 14

Pursuant to Rule 23.1(c) of the Federal Rules of Civil Procedure, plaintiffs S.S.K. Nanduri and Michael Hutsenpiller ("Plaintiffs"), derivatively on behalf of nominal defendant Gogo Inc. ("Gogo" or the "Company"), respectfully submit this Brief in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Settlement (the "Motion") of this consolidated derivative action (the "Derivative Action").[1]

## I. INTRODUCTION

The Settlement of the Derivative Matters[2] is the culmination of hard-fought, arm's-length negotiations by experienced and well-informed counsel, with the assistance of David M. Murphy, Esq. of Phillips ADR (the "Mediator"), a nationally recognized mediator with extensive experience mediating derivative actions. Pursuant to the terms of the Settlement, Gogo has agreed to create three entirely new management-level committees and improve Gogo's existing Disclosure Committee to strengthen the Company's internal controls, improve its compliance policies and disclosure procedures, and enhance the oversight, composition, and Gogo's procedures (collectively, the "Reforms"). The Reforms are designed to address the alleged wrongdoing by remedying alleged weaknesses in, among other things, Gogo's disclosure and compliance controls, risk oversight and management, and communication and accountability among management and the Board. The Board, in exercising its business judgment, has unanimously approved a resolution that the Settlement and its terms provide material corporate benefits to Gogo and its stockholders,

---

[1] The Settlement also resolves related claims arising from the same facts but based on: (i) a Delaware law inspection demand (the "Books and Records Demand") by stockholder Sujit Bakre ("Bakre"), as well as (ii) a litigation demand (the "Conboy Demand," and together with the Derivative Action and the Books and Records Demand, the "Derivative Matters") sent to Gogo's Board of Directors (the "Board") by stockholder Thomas G. Conboy ("Conboy," and together with Bakre and Plaintiffs, the "Stockholders") demanding that the Board remedy the alleged misconduct.

[2] Unless noted otherwise, all capitalized terms used herein shall have the same meaning as set forth in the Stipulation and Agreement of Settlement dated January 5, 2023 (the "Stipulation," "Stip.," or "Settlement"), which is attached as Exhibit 1 to the Declaration of Timothy Brown in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Settlement filed concurrently herewith.

and that the Settlement is fair, reasonable, and in the best interests of the Company and its stockholders. *See* Stip., §IV.

At the preliminary approval stage, the Court need only conclude that the proposed Settlement is within the range of resolutions that might ultimately be found to be fair, reasonable, and adequate, such that notice of the Settlement should be provided to Gogo stockholders and a hearing scheduled to determine whether to approve the Settlement. Plaintiffs respectfully submit that the Settlement easily meets this standard and request that the Court enter an order: (i) preliminarily approving the Settlement, (ii) approving the form and method for providing notice of the Settlement to Gogo stockholders; and (iii) scheduling the Settlement Hearing.

Defendants do not oppose the Motion or any of the requested relief.

## II. BACKGROUND OF THE DERIVATIVE MATTERS AND SETTLEMENT NEGOTIATIONS

### A. Factual Background

Gogo is a provider of in-flight broadband Internet service and other connectivity services for business aircraft. In 2014, Gogo announced its next-generation satellite-based system, 2Ku, and laid out its vision for how 2Ku would lead Gogo to growth after experiencing years of losses. However, Stockholders allege that as early as December 2016, the Company became aware of a problem with its 2Ku systems as they began failing in cold weather. Specifically, Gogo had in place a sophisticated real-time tracking system of its equipment that enabled it to uncover early on that deicing fluid, which planes deployed on their fuselages during cold weather, was able to penetrate the protective cover of the 2Ku systems, damaging the antennae and causing internet service to fail. At least as early as February 2017, Company engineers were working on potential solutions to this problem. Stockholders further allege that, despite this knowledge, Defendants publicly represented that the 2Ku rollout was going well as Gogo installed more defective 2Ku systems that would inevitably require significant cost to replace or repair. The investing public

remained unaware of the full truth until May 4, 2018.

    **B.**    <u>**Relevant Procedural History**</u>

        **1.**    **The Derivative Action**

On September 25, 2018, plaintiff Nanduri filed a Verified Shareholder Derivative Complaint on behalf of Gogo against the Individual Defendants in the Court, asserting claims for breaches of fiduciary duties, unjust enrichment, waste of corporate assets, and violations of Section 14(a) of the Securities Exchange Act of 1934 (the "Exchange Act") (the "Nanduri Action"). ECF No. 1. On September 26, 2018, plaintiff Hutsenpiller filed a similar Verified Shareholder Derivative Complaint on behalf of Gogo against the Individual Defendants in the Court, asserting the same claims as in plaintiff Nanduri's complaint (the "Hutsenpiller Action"). *See* ECF No. 9. On November 16, 2018, the Court granted Plaintiffs' unopposed motion to consolidate the Nanduri Action and the Hutsenpiller Action into the Derivative Action and appoint leadership in the consolidated action. ECF No. 17.

On December 5, 2018, the parties to the Derivative Action jointly moved to stay the proceedings until the sooner of: (i) the denial of any part of any forthcoming motion to dismiss in the related securities class action pending before the Court, titled *Pierrelouis v. Gogo Inc., et al.*, Case No. 1:18-cv-04473 (N.D. Ill.) (the "Securities Class Action"); or (ii) the dismissal of the Securities Class Action with prejudice. The Court granted the joint motion on December 12, 2018. ECF Nos. 26-27. On October 16, 2019, the Court in the Securities Class Action granted defendants' motion to dismiss without prejudice. The Derivative Action remained stayed. Plaintiffs in the Securities Class Action filed a second amended complaint on December 20, 2019, and a third amended complaint on July 22, 2020. On April 26, 2021, the Court in the Securities Class Action denied defendants' motion to dismiss plaintiffs' third amended complaint. ECF Nos. 32, 39. 46.

3

On July 15, 2021, the parties in the Derivative Action submitted a joint status report to the Court proposing to suspend all activity in the Derivative Action pending the outcome of a mediation to be held alongside the parties in the Securities Class Action and with stockholders who made the Books and Records Demand and Litigation Demand. ECF No. 50. On July 22, 2021, the Court directed the parties in the Derivative Action to provide a joint status report on the status of the mediation by October 22, 2021. ECF No. 51. Meanwhile, on August 13, 2021, Plaintiffs filed a consolidated derivative complaint, which included, *inter alia*, allegations based on confidential documents produced by the Defendants. Plaintiffs also filed a motion to seal the complaint, which the Court granted on August 16, 2021. ECF Nos. 52-55.

### 2. The Books and Records Demand

On January 11, 2019, Bakre sent the Board an inspection demand pursuant to 8 Del. C. § 220, requesting certain of Gogo's internal books and records regarding the alleged wrongdoing. Bakre then agreed to a limited stay in favor of the Securities Class Action, which was lifted when the Court denied the defendants' motion on April 26, 2021, as set forth above. On May 13, 2021, Gogo produced books and records in response to the Bakre's demand. On September 3, 2021, after further negotiations between counsel for Bakre and Gogo, Gogo produced additional information and documents to Bakre. On September 30, 2021, Bakre attended the mediation with the parties in the Securities Class Action, the Derivative Action, and Litigation Demand, and the Settling Parties thereafter engaged in substantive negotiations that culminated in the Settlement. *See* Stip., §I, B.

### 3. The Litigation Demand

On June 21, 2021, Conboy sent the Litigation Demand to Gogo's Board demanding that the Board remedy alleged breaches of fiduciary duties and violations of the law committed by Gogo's officers for misrepresenting known issues with the 2Ku global satellite-based in-flight connectivity system. While the demand was pending, Conboy agreed to participate in a mediation

4

alongside the above-mentioned parties. Conboy also entered into a confidentiality agreement to review certain non-public documents produced by Gogo pursuant to the Books and Records Demand, which Conboy's counsel received and reviewed before the mediation. Conboy also coordinated settlement-related efforts with Plaintiffs and Bakre, participating in the mediation and negotiations that resulted in the Settlement. *See* Stip., §I, C.

### C. Settlement Negotiations

In the summer of 2021, the Settling Parties agreed to participate in a mediation regarding a potential resolution of the Derivative Matters before Mediator David M. Murphy, Esq. of Phillips ADR, a nationally recognized mediator with extensive experience mediating complex shareholder actions. In advance of the mediation, the Settling Parties submitted detailed mediation statements to the Mediator, and the Stockholders also presented a joint confidential, comprehensive settlement demand to the Defendants outlining, *inter alia*, detailed proposed corporate governance reforms, including the establishment of and improvements to management and/or Board committees targeting the alleged misconduct asserted in the Derivative Matters. On September 30, 2021, the Settling Parties attended a virtual full-day mediation before the Mediator. Although a resolution between the Settling Parties was not reached that day, the Settling Parties continued substantive settlement discussions and exchanged information and settlement proposals and counterproposals with the Mediator's assistance. *See id.*, §I, D.

On May 31, 2022, the Settling Parties reached an agreement in principle on the material substantive terms of a global resolution of the Derivative Matters, subject to Board review and approval. Thereafter, the Settling Parties and the Defendants' insurers, each represented by counsel, commenced negotiations regarding an appropriate award of attorneys' fees and expenses to Stockholders' Counsel with the Mediator. The Settling Parties ultimately accepted the Mediator's double-blind recommendation of $875,000 as an agreed Fee and Expense Amount,

subject to Court approval. The Settling Parties then negotiated and finalized the formal operative terms of the Settlement as set forth in the Settlement. *See id*.

### III. THE SETTLEMENT CONSIDERATION

In consideration of the Settlement, Gogo will adopt and implement the Reforms, set forth in Exhibits A-D to the Stipulation. The Reforms, summarized below, include the creation of three new management-level committees and improvements to Gogo's existing Disclosure Committee. The Reforms will be in place for at least five (5) years, offering Gogo and its stockholders the benefit of material, immediate, and lasting improvements to Gogo's internal controls, oversight, and policies and practices.

<u>Creation of a New Management-Level Technology Oversight Committee</u>

Critically, to ensure Gogo is not exposed to recurring technological issues with its products and services in the future like those alleged in the Derivative Matters, the Settlement provides for the creation of a management-level Technology Oversight Committee ("TOC") comprised of the Company's CEO, Chief Operating Officer and General Counsel. In the event of a material technological malfunction or other material failure of any of Gogo's in-flight network, products or services, the TOC will meet and: (i) oversee a root cause analysis of the failure or malfunction; and (ii) prepare for distribution to Gogo's Executive Leadership Team, Board, Disclosure Committee, and Risk Committee (defined below) a report detailing the process undertaken in conducting the root cause analysis, a summary of the facts and circumstances causing the technological malfunction or failure, whether any misconduct or violation of Company policy was uncovered, whether the matter was an isolated incident or had, has or may have a Company-wide impact, and the remedial measures implemented or to be implemented. The TOC will have full access to all necessary Company books, records, facilities, and personnel, and may invite other Company personnel, outside auditors, outside counsel, or other outside advisors or guests to attend its meetings, as it deems necessary and appropriate to perform its duties and responsibilities. The

6

TOC will keep minutes of its meetings to be included in the materials for the next Board meeting. *See* Stip., Ex. B.

<u>Creation of a New Management-Level Ethics Committee</u>

The Settlement also provides for the creation of a new management-level Ethics Committee comprised of at least Gogo's General Counsel, Head of Human Resources, and Head of Internal Audit. The Ethics Committee will be responsible for maintaining and overseeing Gogo's Ethics Line, which will provide an anonymous communication channel for employees and other stakeholders to report their concerns regarding the integrity of Gogo's public disclosures, internal controls, auditing, financial reporting, accounting matters, insider sales and other matters. Employees may also use this communication channel to report concerns relating to ethical business or personal conduct, integrity, and professionalism. The Ethics Committee shall ensure that all anonymous whistleblower complaints are provided to the Company's legal counsel and the Chair of the Audit Committee and that all credible complaints are completely and fully investigated, and that any appropriate remedial action is taken. The Ethics Committee and the Company's legal counsel shall ensure that non-retaliation policies are maintained and strictly complied with. The Ethics Committee shall have full access to Company management and employees to fulfil its responsibilities. *Id.*, Ex. C.

<u>Creation of a New Management-Level Risk Committee</u>

In addition, the Settlement provides for the creation of a management-level risk committee ("Risk Committee") comprised of at least three members, each of whom has experience in identifying, assessing, and managing risk exposures of the kinds that the Company faces in its business operations. The Risk Committee will, *inter alia*: (i) oversee Gogo's risk governance structure, assessment and management practices and related guidelines, policies and procedures; (ii) guide Gogo's employees in integrating effective risk management practices into their strategic planning and day-to-day decision making; (iii) oversee Gogo's risk assessments and prospects and

7

maintenance of a strategic risk register that includes known material risks; (iv) oversee the assessment and development of potential steps to disclose, rectify, and mitigate the material risks included in the strategic risk register; (v) receive and review reports from the Company's internal audit staff on the results of financial risk management reviews and assessments; (vi) report regularly (including in an annual written report) to the Board about the strategic risk register to ensure that material risks are communicated; and (vii) assist the Audit Committee with financial, legal and cybersecurity risks. The Risk Committee may access all levels of Company management and employees and will work with the Company's existing Sarbanes-Oxley Act steering committee to conduct an annual review of the effectiveness of Gogo's internal controls and implement changes to Gogo's policies and internal controls as necessary. *Id.*, Ex. A.

### Enhancements to Gogo's Disclosure Committee

Stockholders' allegations concern alleged misrepresentations regarding known issues with the Company's flagship product. In response to these allegations, the Settlement provides for reforms to the Company's Disclosure Committee and its Charter to ensure its public financial and other disclosures are accurate, timely, and complete and that the Board and its committees are appropriately involved. Specifically, the Disclosure Committee will now be required to (i) conduct semi-annual reviews to identify leading oversight practices in connection with Gogo's Disclosure Statements; (ii) review at least once annually the non-financial metrics disclosed in the Company's Disclosure Statements filed with the SEC; (iii) provide quarterly reports to the Audit Committee and at least one report annually to the full Board concerning the activities of the Disclosure Committee; and, (iv) if the Disclosure Committee becomes aware of a false statement or omission of material fact in a Disclosure Statement or other public Company's statement, the Disclosure Committee will report the deficiency to the Audit Committee.

Stockholders believe that the Reforms are tailored to address the alleged issues in the Derivative Matters and bring Gogo's top compliance and legal officers together with the key

8

business constituents who have access to detailed information about day-to-day operations to ensure that Gogo appropriately manages its technology, is vigilant with its risk assessment and oversight and ethics compliance, and that disclosures are vetted and fairly represent Gogo's transactions and financial condition.

## IV. THE COURT SHOULD GRANT PRELIMINARY APPROVAL

### A. Applicable Legal Standards

Federal Rule of Civil Procedure 23.1 governs a district court's analysis of the fairness of a settlement of stockholder derivative action. Fed. R. Civ. P. 23.1(c). Under Rule 23.1, a derivative action "may be settled . . . only with the court's approval. Notice of a proposed settlement, voluntary dismissal, or compromise must be given to shareholders or members in the manner that the court orders." Fed. R. Civ. P. 23.1(c). Court approval of a derivative settlement involves two steps: (1) determining whether the proposed Settlement appears to fall within the range of possible approval such that notice of the settlement should be provided to stockholders, which is referred to as preliminary approval; and (2) after such notice has been provided, holding a fairness hearing to determine whether the settlement is fair, reasonable, and adequate, which is referred to as final approval. *See* MANUAL FOR COMPLEX LITIGATION (FOURTH) §13.14 (4th ed. 2004). At this stage, Plaintiffs seek only preliminary approval of the proposed Settlement and the Court's permission to notify Gogo's stockholders of the Settlement's terms.

At the preliminary approval stage, the Court need only assess "whether the proposed settlement is within the range of possible approval." *Armstrong v. Bd. of Sch. Dirs. of Milwaukee,* 616 F.2d 305, 314 (7th Cir.1980); *see also*, *McCue v. MB Fin., Inc.*, 2015 WL 1020348, at *1 (N.D. Ill. Mar. 6, 2015). A proposed settlement falls within the "range of possible approval" when it is conceivable that the proposed settlement will meet the standards applied for final approval. *See, e.g.*, *In re Gen. Motors Corp. Engine Interchange Litig.*, 594 F.2d 1106, 1124 (7th Cir. 1979). While only summarily reviewed at the preliminary approval stage, the Court may

9

consider the following factors in deciding whether to grant final approval of a proposed settlement: (1) the strength of plaintiffs' case on the merits, balanced against the benefits of the settlement; (2) the complexity, length, and expense of continued litigation; (3) whether the settlement negotiations involved collusion; (4) the opinion of knowledgeable counsel; and (5) the stage of the proceedings, including the amount of discovery completed. *Susquehanna Corp. v. Korholz*, 84 F.R.D. 316, 319–20 (N.D. Ill. 1979). Preliminary consideration of these factors supports that the Settlement easily falls within the range of possible approval.

    **B.**  **The Settlement Falls Within the Range of Possible Approval**

      i.  The Strength of Stockholders' Claims Balanced Against the Material Benefits Provided by the Settlement

   While Stockholders believe that their claims (and potential claims) are meritorious, establishing liability was not a foregone conclusion. Plaintiffs acknowledge the risk that the Derivative Action would not have withstood Defendants' anticipated motion to dismiss, especially given the heightened pleading requirements under Rule 23.1 for demand futility. *See In Re Abbott Labs. Deriv. S'holders Litig.*, 325 F.3d 795, 807 (7th Cir. 2003). Given Gogo's broad exculpation clause protecting its directors, Plaintiffs would need to establish intentional wrongdoing that rises to the level of self-dealing and/or bad faith. Although all Stockholders had access to internal documents produced by the Company, including as set forth in Plaintiffs' consolidated complaint, Defendants emphatically deny any wrongdoing or breach of duty and pleading such facts with particularity prior to formal discovery is no easy feat. *See Dorvit on behalf of Power Sols. Int'l, Inc. v. Winemaster*, 950 F.3d 984, 989 (7th Cir. 2020). ("the ability to demonstrate demand futility *is* a substantive element of the strength of such an action.") (emphasis in original). Moreover, even if Plaintiffs overcame this pleading hurdle, litigating the merits of the case, which rely in part on the core operations theory and the alleged failure to conduct proper oversight, still pose significant risks and challenges. *See, e.g.*, *Pfeiffer v. Toll*, 989 A.2d 683, 693 (Del. Ch. 2010); *In re Caremark Int'l Inc. Derivative Litig.*, 698 A.2d 959, 967 (Del. Ch. 1996). The remaining

Stockholders would face similar hurdles if they were to file actions on the Company's behalf.³ When balanced against "the uncertain and unknowable benefits of litigation, the benefits of this settlement agreement to [Gogo and its stockholders] are significant." *Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*, 2012 WL 651727, at *5 (N.D. Ill. Feb. 28, 2012).

The Reforms described above confer tangible, material benefits to Gogo and its stockholders, especially in light of the risks of no or delayed recovery for the Company. The Reforms are substantive and meaningful: they mandate, among other things, enhanced disclosure controls, including critical reporting by the Disclosure Committee to the Audit Committee and the Board; a new management-level Ethics Committee, which is responsible for enhanced oversight over the Company's whistleblower complaints; a new management-level Risk Committee responsible for overseeing the Company's risks and implementing effective risk management practices, including regular reporting to the Board regarding any material risks; and a new management-level Technology Oversight Committee which shall be responsible for overseeing a root cause analysis of any material failure or malfunction regarding Gogo's products or services, and reporting to the Board, Disclosure Committee, and Risk Committee. Stip., §V, ¶3; *see Dorvit*, 950 F.3d at 992 (recognizing that some similar reforms, including increased reporting to the company's audit committee and board of directors and enhanced whistleblower controls, are "substantive and meaningful"). Moreover, Gogo's Board reviewed the proposed Settlement, and agrees that the Settlement provides a material benefit to, and is in the best interests of, the Company and its stockholders. *See id.*, §IV; *see also Susquehanna*, 84 F.R.D. at 321 ("The corporation's directors, [are] entitled to and should be given considerable respect by this court.").

---

³ Conboy's Litigation Demand would present its own hurdles and risks, as: (i) it would require the Company to expend significant time and resources to investigate the alleged wrongdoing, and (ii) if the Board refused to commence litigation against the alleged wrongdoers, Conboy could only proceed derivatively if he adequately alleged that such refusal was wrongful and not protected by the business judgment rule. *City of Tamarac Firefighters' Pension Tr. Fund v. Corvi*, 2019 WL 549938 at *13 (Del. Ch. Feb. 12, 2019).

11

   ii. <u>The Complexity, Expense, and Likely Duration of the Litigation</u>

Stockholders acknowledge that Defendants would continue to vigorously dispute the claims asserted, recognize the uncertain outcome and the risk of any litigation, especially in complex actions such as the Derivative Action (or in any derivative action based on the Books and Records Demand or Litigation Demand), as well as the difficulties and delays inherent in such litigation. *See* Stip., §II. Stockholders and Stockholders' Counsel are also mindful of the inherent problems of proof of, and possible defenses to, the claims asserted in the Derivative Matters. *Id*. Shareholder derivative actions are notoriously complicated, and the Derivative Matters would have been no exception. Continued litigation would likely have taken several years. *See Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc*., 2011 WL 3290302, at *7 (N.D. Ill. July 26, 2011) ("Continuing to litigate this case will require vast expense and a great deal of time, on top of that already expended."). Even if Stockholders were to prevail on the claims and establish liability, the amount of recoverable damages would still have posed significant issues and would have been subject to further litigation. The Settlement eliminates these and other risks of continued litigation, including the very real risk of no recovery after years of litigation, while ensuring that Gogo and its stockholders obtain material and lasting benefits.

   iii. <u>The Settlement is a Product of Arm's-Length Negotiations</u>

In determining the fairness of a proposed settlement, courts consider whether the settlement was the product of good faith bargaining at arm's-length without collusion. *See Susquehanna*, 84 F.R.D. at 319–20. Courts have found that a mediator's involvement in settlement supports the notion that a settlement was negotiated at arm's-length and is therefore fair and reasonable. *In re Fab Universal Corp. Shareholder Derivative Litig.*, 148 F. Supp. 3d 277, 280 (S.D.N.Y. 2015) ("The Proposed Settlement was the product of extensive formal mediation aided by a neutral JAMs mediator, hallmarks of a non-collusive, arm's-length settlement process."). As noted above, the Settlement was only agreed upon after a formal mediation and extended, arm's-length negotiations

under the auspices of the Mediator. *See* Stip., §I, D. Thus, this factor supports preliminary approval. *See Lace v. Fortis Plastics LLC*, 2015 WL 1383806, at *3 (N.D. Ind. Mar. 24, 2015) (granting preliminary approval and noting that the "Settlement Agreement appears to be the product of earnest, informed, arm's length, and non-collusive negotiations; it has no obvious deficiencies").

      iv.    The Stage of the Proceedings and the Amount of Discovery Completed

When considering the stage of proceedings, the Court considers whether the parties have obtained sufficient information to make an informed decision regarding entering into the Settlement. *See Unite Nat'l Ret. Fund v. Watts*, 2005 WL 2877899, at *3 (D.N.J. Oct. 28, 2005) ("[T]he parties fully appreciated the merits of this case."). Here, Stockholders and their counsel negotiated the proposed Settlement only after conducting a robust, multi-faceted factual and legal investigation, which included, among other things, reviewing and analyzing the Company's internal, board-level documents produced pursuant to confidentiality and non-disclosure agreements, in addition to Company press releases, public statements, SEC filings, media and analyst reports, and pleadings in the Securities Class Action. *See* Stip., §II. The accumulation of the information discovered through their efforts, as well as counsel's extensive experience litigating similar complex actions, permitted Stockholders' Counsel to be well-informed in evaluating the strength of the derivative claims and the risks of continued litigation, and to have sufficient information to support their decision that the Settlement is fair, reasonable, adequate, and in the Company's best interests. *Id.*

      v.    The Opinion of Competent Counsel

"The court is 'entitled to rely heavily on the opinion of competent counsel'" in approving a settlement. *Am. Int'l Grp.*, 2011 WL 3290302, at *8. Here, Stockholders are represented by counsel with extensive experience in litigating complex shareholder derivative actions. Likewise, Defendants are represented by two of the nation's leading corporate defense firms. As a result of

counsel's experience and hard-fought negotiations, which were overseen by a highly experienced Mediator, the Settling Parties reached a Settlement which all Settling Parties agree confers material benefits on Gogo and is in the Company's best interests. *See* Stip., §§II-III. Thus, the views of experienced counsel weigh in favor of approval of the Settlement.

In sum, each of the foregoing factors support that the Settlement falls within the range of possible approval and should be preliminarily approved.

V. **THE MANNER AND FORM OF NOTICE SHOULD BE APPROVED**

As required by Rule 23.1 and due process, the Settling Parties have agreed to a notice plan that is reasonably calculated to apprise Gogo stockholders of the terms of the proposed Settlement, and provide them with an opportunity to present any objections they may have on behalf of the Company. Within ten (10) business days following entry of the proposed Preliminary Approval Order, Gogo shall: (a) file with the SEC a Form 8-K attaching the Notice and Stipulation (with exhibits thereto); (b) post the Notice and Stipulation (with exhibits thereto) on the "Investor" portion of Gogo's website; and (c) publish the Summary Notice once in the *Investor's Business Daily*. *See* Stip., §V, ¶3.2.[4] The Settlement Notice complies with Rule 23.1 and due process and is similar to those approved in other stockholder derivative cases. *See Gould v. Cederoth, et al.,* Case No. 1:13-cv-2145 (N.D. Ill. Dec. 12, 2016) (notice to include a filing with the SEC directing stockholders to the company's website were the long notice and stipulation will be posted; as well as a summary notice in *Investor's Business Daily*). Brown Decl., Exhibit 2.[5] Thus, the form and

---

[4] The proposed Notice describes, *inter alia*: (i) the nature of the litigation, the claims asserted therein, the Settling Parties' negotiations and reasons for settling; (ii) the Settlement terms; (iii) the procedure for objecting to the Settlement; (iv) the date of the Settlement Hearing; and (v) the payment of Stockholders' Counsel's attorneys' fees and expenses and Service Awards to the Stockholders. Stip., Exhibits E-1, E-2. The proposed Settlement Notice therefore "reasonably apprises the members of the class of the terms of the settlement and of the options open to those who wish to dissent." *Susquehanna*, 84 F.R.D. at 324.

[5] *See also Evans on behalf of United Dev. Funding IV v. Greenlaw*, 2018 WL 2197780, at *4 (N.D. Tex. May 14, 2018) (notice of the settlement to be filed with the SEC together with a Form

manner of the proposed notice constitute the best notice practicable under the circumstances and satisfy the requirements of Rule 23.1, due process, and any other applicable law. *See Chaffee v. A & P Tea Co.*, 1991 WL 5859, at *4 (N.D. Ill. Jan. 16, 1991).

## VI. <u>CONCLUSION</u>

Plaintiffs respectfully submit that the Settlement is within the range of approval and request that the Court preliminarily approve the Settlement, direct the issuance of the notice of the Settlement, and schedule the Settlement Hearing to consider final approval of the Settlement.

---

8-K and to be published in *Investor's Business Daily*); *Bushansky v. Armacost*, 2014 WL 2905143, at *6 (N.D. Cal. June 25, 2014) (in notice of dismissal plan, requiring a link on defendant's website, a press release to be issued by defendant, and a Form 8-K filing); *In re Rambus Inc. Derivative Litig.*, 2009 WL 166689, at *2 (N.D. Cal. Jan. 20, 2009) (same).

Dated: January 6, 2023                    Respectfully submitted,

**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLC**

By: */s/ Carl Malmstrom*
Carl Malmstrom
111 W. Jackson St., Suite 1700
Chicago, IL 60604
Telephone: (312) 984-0000
Facsimile: (212) 545-4653
malmstrom@whafh.com

*Liaison Counsel for Plaintiffs*

**THE ROSEN LAW FIRM, P.A.**

Phillip Kim
275 Madison Avenue, 40th Floor
New York, NY 10016
Telephone: (212) 686-1060
Facsimile: (212) 202-3827
pkim@rosenlegal.com

**THE BROWN LAW FIRM, P.C.**

Timothy Brown
767 Third Avenue, Suite 2501
New York, NY 10017
Telephone: (516) 922-5427
Facsimile: (516) 344-6204
tbrown@thebrownlawfirm.net

*Co-Lead Counsel for Plaintiffs*